TEXAS PRODUCE COMPANY v. P. A. TURNER,
ADMINISTRATOR.

No. 267.

Partnership—Dissolution—Sale—Estoppel—Case in Judgment.—Finley, a retiring partner, made a secret conveyance of his interest in the partnership business to Hall, his dormant partner, agreeing that the business might be carried on in the name of Finley until February 1, 1891, thereafter, and received in consideration a promissory note, and an indemnity that Hall would discharge all debts then existing, or that might thereafter be created against the business, and protect Finley against loss by reason thereof. The instrument of conveyance was deposited for keeping with the attorney who drew it, and it contained the following: "It is further agreed, that should said J. D. Hall desire to do so, he may, upon the payment of said promissory note, and all the then outstanding liabilities of said business of said J. T. Finley, at any time prior to said 1st day of February, 1891, have said business, together with everything of value connected therewith, transferred and assigned to him by said party of the first part" (Finley). After this conveyance, Hall conducted the business in Finley's name until Hall's death, which was July 14, 1891. When the note matured on February 1, 1891, Finley demanded payment, and Hall paid a part of it, and told Finley that as soon as he could he would pay the balance. After Hall's death, Finley made an inventory of the stock of goods, and a few days thereafter sold the goods to the produce company, they agreeing to pay certain debts created by the business while so conducted under Finley's name. Before the Texas Produce Company had paid any sum whatever, and before they had completed an inventory, but after the terms of the sale had been agreed upon, they were notified not to pay anything on the goods; that Finley had no interest in them; that they belonged to the estate of J. D. Hall; that appellee would be appointed administrator of the Hall estate the following Monday, and that he would then demand the goods as such administrator. In a suit by Hall's administrator against appellant for the value of goods (in which the holders of debts created by Hall in the name of Finley intervened), Held:

1. The legal effect of the instrument of conveyance from Finley to Hall, as between them, absolutely conveys all of Finley's interest in the business to Hall.

2. The partnership between Finley and Hall was dissolved by the sale of Finley's interest to Hall, and at the time of Hall's death Finley had no interest, either legal or equitable, in the property of the business.

3. Upon Hall's death the property belonged to his estate, subject to administration, and the administrator of the estate was entitled to possession of it.

4. In the purchase from Finley, the Texas Produce Company acquired no title, unless by estoppel, and the estate of Hall is not estopped to assert title.

APPEAL from Bowie. Tried below before Hon. JOHN L. SHEPPARD.

*Todd & Hudgins*, for appellants, Texas Produce Company, and Mrs. M. A. Sheehan, Cameron & Castles, Blaker Milling Company, John McMasters, Mrs. Josephine A. Smith, Swift & Co., People's Bank of Hope, East St. Louis Packing and Provision Co., intervenors; *Vaughan & Leary*, for Interstate National Bank of Texarkana, intervenors; and *Henry & Henry*, for Texarkana National Bank and Abilene Mill and Elevator Company, and Blackwell-Durham Tobacco Company, inter-

venors.—1. The court erred in finding as a fact that the partnership between J. D. Hall and J. T. Finley was terminated or dissolved on October 13, 1890; because the evidence shows that the agreement of sale by Finley to Hall was merely executory and conditional, and not intended to pass Finley's interest immediately and absolutely, and was never delivered, and the terms of same were never complied with by Hall; that the interest of Finley was to and did remain the same until there should be full compliance by Hall.

2. The court erred in finding as a fact, in effect, that said contract constituted an absolute sale, with L. C. De Morse and J. R. Ferguson as indemnitors to Finley against loss; because the evidence and the contract itself shows that De Morse and Ferguson were simply sureties for Hall for the performance in future of the obligation to make an absolute purchase of Finley's interest in the business.

3. In a dormant partnership, the ostensible partner surviving has full power of sale, especially to pay the debts of the partnership.

J. T. Finley was the apparent sole owner and in possession of the goods; the Texas Produce Company purchased from him in good faith, for value, without notice of any defect in his title (if there were any), and the produce company should be protected in their purchase. Rogers v. Nichols, 20 Texas, 719; Converse v. McKee, 14 Texas, 30; De Causey v. Bailey, 57 Texas, 667; Shields v. Fuller, 4 Wis., 102; Id., 65 Am. Dec., 293, and notes; How v. Kane, 54 Am. Dec., 155; 1 Bates on Part., sec. 155, and notes; 2 Bates on Part., secs. 715, 716, 718, 720, 726, 729–732.

*P. A. Turner* and *Talbot & Hart*, for appellee.—A retiring partner has no lien on the partnership property when he sells his interest in the firm assets to his copartners, and takes their covenant to indemnify and save him harmless from the liabilities of the firm. He can not maintain any proceeding in equity to subject such assets to the satisfaction of such debts. 46 Am. Dec., 71; 67 Id., 305; 2 Lindley on Part., 4 ed., pp. 863, 867, and notes.

On dissolution of partnership, an assignment by retiring partner, bona fide, of his interest in the stock and effects to the remaining partner, vests the same in the latter as his individual property, and it will be distributable accordingly, notwithstanding his subsequent insolvency. 63 Am. Dec., 302.

When the right of partners themselves to apply partnership property in extinguishment of partnership debts is gone, the right of partnership creditors thus to apply it is also gone. 67 Am. Dec., 305.

Creditors of a partnership have no lien on partnership property, and can invoke the rule that the partnership property shall be primarily liable only through right of partners to have joint property applied to pay joint debts. 67 Am. Dec., 305; 70 Id., 149; 80 Id., 531.

FINLEY, ASSOCIATE JUSTICE.—*Statement.*—1. P. A. Turner was duly and legally appointed temporary administrator of the estate of J. D. Hall, deceased, before the institution of this suit; and afterwards he was duly and legally appointed permanent administrator of said estate.

2. Up to and for some time prior to the — day of March, 1890, the said J. D. Hall was doing business in the city of Texarkana in partnership with one L. C. De Morse, under the firm name of L. C. De Morse, the said Hall being then and there a silent partner in said business; and on the — day of March, 1890, one J. T. Finley, at the special instance and request of said J. D. Hall, purchased said L. C. De Morse's interest in said business, and said business was then conducted in said city in the name of J. T. Finley, the said Hall being a dormant partner of said Finley up to October 13, 1890, at which time the said J. T. Finley sold his entire interest in said business to the said J. D. Hall, with the agreement that the said Hall was to continue said business in the name of J. T. Finley until the 1st day of February, 1891, if the said Hall desired to use the said Finley's name that long; the said Hall agreeing to pay the said Finley the sum of $4000, which sum he then and there paid to said Finley by having the said L. C. De Morse to execute and deliver his promissory note to the said Finley for the said sum, with 10 per cent interest until paid; and the said Hall then and there gave the said Finley an indemnity, with the said De Morse and one Ferguson as sureties, that the said Hall would pay all of the indebtedness of the said business then due by said J. T. Finley and Hall; and that the said Hall would pay and save harmless the said J. T. Finley from any other debts that might be created by the said Hall in said business in the name of J. T. Finley up to the said 1st day of February, 1891, provided the said Hall used said Finley's name that length of time. At the time of this sale Hall was in possession, as the managing partner, and remained in possession after the sale.

This conveyance of Finley's interest to Hall was secretly made, and intended to be kept a secret from the public until the purchase price of $4000 and the liabilities created by the business in Finley's name should be discharged. The instrument of conveyance was deposited with Scott, the attorney who drew it up, to be by him kept as a trustee, and its secrecy preserved as stated. He was made custodian of the instrument for its preservation and secrecy. The instrument of conveyance is as follows:

"This agreement, made and entered into this the 13th day of October, 1890, by and between J. T. Finley of the first part, and J. D. Hall, principal, and L. C. De Morse and J. R. Ferguson as sureties of and for the said J. D. Hall, of the second part—witnesseth:

"That for and in consideration of the sum of $4000 to be paid to said J. T. Finley by the said L. C. De Morse, as evidenced by one certain promissory note of even date herewith, in said sum, due on the 1st day of February, 1891, bearing interest from date until paid at the rate of 10 per cent per annum; and the further promises and agreements herein contained, said party of the first part does hereby grant, bargain, sell, transfer, assign, and convey unto the said J. D. Hall his entire interest in the wholesale business now conducted in and under the name of J. T. Finley, at Texarkana, Texas, including the goodwill, merchandise, notes, and accounts, lease, or leases, as well as everything of value belonging to said business.

"And it is further understood and agreed, that said J. D. Hall, for his own use and benefit, may conduct and run said business under the name of J. T. Finley until said 1st day of February, 1891, if he, said Hall, shall desire to do so. And it is further understood and agreed, that said Hall shall assume, discharge, and pay off all outstanding indebtedness of whatsoever kind or nature now existing or that may hereafter be created against said business of said J. T. Finley, and shall save and protect said J. T. Finley from all harm or loss by reason of any such indebtedness or liability now existing or that may hereafter be created. It is further agreed, that should the said J. D. Hall desire to do so, he may upon the payment of said promissory note and all the then outstanding liabilities of said business of said J. T. Finley, at any time prior to said 1st day of February, 1891, have said business, together with everything of value connected therewith, transferred and assigned to him by said party of the first part.

[Signed]     "J. T. FINLEY,
"J. D. HALL,
"L. C. DE MORSE,
"J. R. FERGUSON."

This instrument was not recorded, and appellants had neither actual nor constructive notice of it.

That after the 1st day of February, 1891, the said J. T. Finley permitted the said Hall to continue his said business in the name of J. T. Finley; after the 13th day of October, 1890, Finley left the said city of Texarkana and went to the town of Hope, Arkansas, to live, and permitted the said J. D. Hall to use his name in managing and conducting the said business of J. D. Hall.

That when the note for the sum of $4000 given to the said J. T. Finley became due, which was February 1, 1891, the said Finley demanded payment of it from said Hall, and Hall paid part of the same, leaving a balance due on said note of about $2500; and Hall told the said Finley that as soon as he could do so he would pay him the balance due him on said note. That the said J. D. Hall had open, continuous, and

absolute management and control of said business, conducting the same in the name only of said J. T. Finley, from the said 13th day of October, 1890, up to the day of his death, which was July 14, 1891. That during said Hall's last illness, during which he died, Mrs. J. D. Hall telegraphed to Hope, Arkansas, for the said Finley to come to Texarkana to assist in nursing the said Hall; that said Finley went to said city in response to said telegram, and was recognized there simply as a friend of the said J. D. Hall. That after J. D. Hall died, the said Finley had the brother-in-law of Mrs. J. D. Hall, after her husband's death, to go to said storehouse with him, and then and there took an inventory of the stock of goods then on hand. That the defendant, the Texas Produce Company, was doing business then, and for some time prior thereto, in the same block that said Hall was carrying on his said business, and the members of the firm of said Texas Produce Company were, at the death of said Hall, and for a long time prior thereto, intimately acquainted with said Hall and his wife. That a few days after the death of said Hall, the said J. T. Finley sold the property involved in this suit to the Texas Produce Company and made them a bill of sale, they agreeing with Finley to pay certain creditors of said J. D. Hall the price of the goods therein named. These debts agreed to be paid were created by the business while conducted under Finley's name, and for which Finley was liable to the creditors. The amount agreed to be paid was the fair value of the stock of goods, etc.

That before said company had paid any sum whatever for said goods, they were notified in person by the plaintiff herein that said goods were the property of the estate of J. D. Hall, and that they would be claimed as such. This notice was given after the terms of the sale were agreed upon, but on the same day, and soon after the parties began taking an inventory of the goods, and before its completion. Mr. Turner had not at that time been appointed administrator of the Hall estate, but he stated that he would secure such appointment on Monday following (this was Saturday), and that he would then demand the goods as administrator of Hall's estate. He told them not to pay anything on the goods, as Finley had no interest in them.

That the defendant herein has never paid any part of the purchase money for said goods, save and except the sum of $500. That the debts claimed by intervenors were created by J. D. Hall in the name of J. T. Finley.

*Conclusions of Law.*—1. By the terms of the instrument executed by J. T. Finley, J. D. Hall, L. C. De Morse, and J. R. Ferguson on October 13, 1890, the entire interest of J. T. Finley in the business conducted by Hall in Finley's name was conveyed to J. D. Hall. The legal effect of the instrument, as between Finley and Hall, absolutely conveys all of Finley's interest in the business to Hall, for the

consideration of $4000, to be paid February 1, 1891, and in security of the payment of this sum as the purchase price, a note of L. C. De Morse for $4000, due February 1, 1891, was furnished by Hall and accepted by Finley, and also the further consideration, that Hall should hold Finley harmless against all debts incurred by the business in Finley's name, past and future, De Morse and Ferguson becoming sureties of Hall for the performance of his obligations under the conveyance.

2. At the time of Hall's death, Finley had no interest in the business; he only held a claim against Hall for the purchase money, secured by De Morse's note, and Hall's obligation, with Ferguson and De Morse as sureties, to hold him harmless against the debts incurred by the business, for which he was liable. The partnership between Finley and Hall was dissolved by the sale of Finley's interest to Hall, October 13, 1890; and thereafter Finley had no interest, either legal or equitable, in the property or the business conducted in Finley's name. 46 Am. Dec., 71; 67 Id., 305; 70 Id., 149; 80 Id., 531.

3. On the death of Hall, the property of the business, owned and conducted by him in Finley's name, became the property of his estate, subject to administration, and the administrator of the estate was entitled to the possession of it.

4. The Texas Produce Company, through its purchase from J. T. Finley, took only such title as Finley had to the property, unless it acquired title by way of estoppel. The fact that one buys personal property in good faith, believing his vendor to have title, and pays its value, can not confer any greater title upon him than his vendor in reality possessed.

5. The Texas Produce Company was notified that the property belonged to the estate of J. D. Hall before it had taken an invoice of the goods, and before it had paid anything upon the purchase. Its obligation to pay certain debts of the business was based upon a legal conveyance of the property by Finley as a consideration, and if the consideration failed, the obligation ceased to be binding. Under such a state of facts, we do not think Hall's estate is estopped from asserting title against appellant. Big. on Estop., 3 ed., p. 93; Peters v. Clements, 52 Texas, 142. Aside from this view of the facts, the issue of estoppel is not directly raised by the pleadings of the plaintiff, and we hardly think the facts pleaded would justify the determination of the case upon that issue. There is no finding upon this issue, and it was evidently not called to the attention of the trial court. 74 Texas, 360; 53 Texas, 67; 47 Texas, 15; 45 Texas, 170.

We have carefully examined all the assignments of error, and do not think they present any material error calling for a reversal of the judgment. We do not feel that we are called on in this proceeding to discuss the rights of the creditors of the business, as opposed to the

widow and children of J. D. Hall. The question of a superiority of their claims upon the property is not a legitimate issue in the case, and is not concluded by this litigation.

The judgment of the court below is affirmed.

*Affirmed.*

Delivered April 11, 1894.

Writ of error refused by the Supreme Court, May 24, 1894.